1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

MARK HOFFMAN, individually and on
behalf of all others similarly situated,

                Plaintiff,

   v.

BCI ACRYLIC, LLC D/B/A BATH
PLANET, and NORTHWEST BATH
SPECIALISTS, LLC D/B/A BATH
PLANET OF SEATTLE,

                Defendants.

Case No. 2:25-cv-02032-RSM

Honorable Judge Ricardo S. Martinez

Noting Date:
February 16, 2026 (No Oral Argument)

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
BCI ACRYLIC, LLC D/B/A BATH PLANET'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

1

## <u>TABLE OF CONTENTS</u>

2

**Page(s)**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ....................................................................................................... 1

III.  LEGAL STANDARD................................................................................. 3

   A.    Standard on motion for judgment on the pleadings ............................... 3

   B.    Standard for vicarious TCPA liability under federal common law. ....... 3

IV.   ARGUMENT.............................................................................................. 5

   A.    Mr. Hoffman plausibly alleges Bath Planet's vicarious liability. .......... 5

     1.    Mr. Hoffman has sufficiently pleaded Bath Planet's actual authority. ............................ 6

     2.    Mr. Hoffman has sufficiently pleaded Bath Planet's apparent authority....................... 7

     3.    Mr. Hoffman has sufficiently pleaded ratification........................... 8

   B.    The relationship and agreement between Bath Planet Seattle and Bath Planet further support Bath Planet's vicarious liability. .................................................... 9

     1.    Bath Planet Seattle functions as the sales and installation arm of Bath Planet's distribution pipeline. ........................................ 10

     2.    The Dealership Agreement supports an agency relationship....................... 11

   C.    Agency determinations require discovery and are best resolved at summary judgment or trial .................................................... 14

V.    CONCLUSION......................................................................................... 17

CERTIFICATE OF SERVICE .......................................................................... 19

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BCI ACRYLIC, LLC D/B/A BATH PLANET'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Page ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                      **Page(s)**

3

*Arizona v. Michael D. Lansky L.L.C.*,
4
    No. CV-23-00233, 2024 U.S. Dist. LEXIS 83642 (D. Ariz. May 8, 2024) ........................... 14

5
*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
    251 F. Supp. 3d 1187 (M.D. Tenn. 2017).................................................................. 6
6

7
*Dawson v. Porch.com*,
    No. 2:20-cv-00604, 2024 U.S. Dist. LEXIS 206363 (W.D. Wash. Nov. 13, 2024)................ 14

8
*Dolemba v. Ill. Farmers Ins. Co.*,
    213 F. Supp. 3d 988 (N.D. Ill. 2016) ................................................................. 4, 7
9

10
*Dubret v. Holland Am. Line Westours, Inc.*,
    25 F.Supp.2d 1151 (W.D. Wash. 1998)................................................................. 13

11
*Ewing v. Freedom Forever LLC*,
    No. 20-cv-880-JLS, 2021 U.S. Dist. LEXIS 53561 (S.D. Cal. Mar. 22, 2021)...................... 14
12

13
*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ........................................................................ 3

14
*Gomez v. Campbell-Ewald Co.*,
    768 F.3d 871 (9th Cir. 2014) ........................................................................ 4

15
*Griffin v. Am.-Amicable Life Ins. Co. of Texas*,
16
    No. 6:24-cv-00243, 2024 U.S. Dist. LEXIS 175344 (D. Or. Sep. 27, 2024) ...................... 14

17
*Hartman v. United Bank Car, Inc.*,
    No. C11-1753JLR, 2012 U.S. Dist. LEXIS 144759 (W.D. Wash. Oct. 4, 2012)................ 4, 14
18

19
*Hayhurst v. Keller Williams Realty, Inc.*,
    No. 1:19CV657, 2020 WL 4208046 (M.D.N.C. July 22, 2020) ................................. 6

20
*Henderson v. United Student Aid Funds, Inc.*,
    918 F.3d 1068 (9th Cir. 2019) ....................................................................... 4
21

22
*Hoffman v. Hearing Help Express Inc.*,
    No. C19-5960, 2021 U.S. Dist. LEXIS 5959 (W.D. Wash. Jan. 12, 2021)........................... 14

23

24

*In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*,
   No. 09-2076RSL, 2010 WL 2640260 (W.D. Wash. June 25, 2010) ...................................... 13

*J&J Sports Prods., Inc. v. Bear*,
   No. 1:12-CV-01509-AWI-SKO, 2013 U.S. Dist. LEXIS 27084 (E.D. Cal. Feb. 26, 2013) ...... 4

*John v. Keller Williams Realty, Inc.*,
   No. 619CV1347ORL40DCI, 2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) ............................ 6

*Jones v. Royal Admin. Servs.*,
   887 F.3d 443 (9th Cir. 2018) ................................................................................. 4, 5, 15

*Klassen v. Solid Quote LLC*,
   702 F. Supp. 3d 1052 (D. Colo. 2023) ................................................................................. 4

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ................................................................................. 10, 11, 13

*Kristensen v. Credit Payment Servs.*,
   12 F.Supp.3d 1292 (D. Nev. 2014) ................................................................................. 4, 14

*McCurley v. Royal Seas Cruises, Inc.*,
   No. 21-55099, 2022 U.S. App. LEXIS 9079 (9th Cir. Apr. 5, 2022) ................................ 7, 8

*Nat'l Football Scouting Inc. v. Cont'l Assur. Co.*,
   931 F.2d 646 (10th Cir.1991) ................................................................................. 4

*Rogers v. Assurance IQ, LLC*,
   No. 2:21-cv-00823, 2023 U.S. Dist. LEXIS 51955 (W.D. Wash. Mar. 27, 2023) .................. 14

*United States v. Dish Network LLC*,
   256 F. Supp. 3d 810 (C.D. Ill. 2017) ................................................................................. 6, 7

*Unruh v. Cacchiotti*,
   172 Wn.2d 98 (Wash. 2011) ................................................................................. 4, 14

*Williams v. Pillpack LLC*,
   644 F. Supp. 3d 845 (W.D. Wash. 2022)................................................................... *passim*

**Rules**

Rule 12(b)(6)................................................................................................................... 3
Rule 12(c)........................................................................................................................ 3

**Administrative Decisions**

*In the Matter of the Joint Petition Filed by Dish Network, LLC,*
    28 FCC Rcd. 6574, 6592 (2013) ............................................................................ 4, 7

**Secondary Sources**

RESTATEMENT (THIRD) OF AGENCY § 1.01 .................................................................... 4
RESTATEMENT (THIRD) OF AGENCY § 2.02(1) ............................................................... 6
RESTATEMENT (THIRD) OF AGENCY § 2.03 .................................................................... 7

## I.    INTRODUCTION

Defendant BCI Acrylic, LLC's ("Bath Planet" or "Defendant") motion reflects a common strategy in TCPA cases: structuring a sales operation through intermediaries and then invoking that structure to evade liability. Bath Planet does not dispute that the calls to Mr. Hoffman were made to sell Bath Planet–branded products, nor does it deny that it accepted the economic benefits generated by those calls. Instead, it contends that Bath Planet's liability disappears because the calls were placed by its regional dealer and installer, Bath Planet Seattle, rather than by Bath Planet itself. It does not. The TCPA does not permit a defendant to reap the benefits of unlawful telemarketing while insulating itself from liability by operating through intermediaries, or by demanding that consumers plead the hidden internal mechanics of a telemarketing scheme deliberately kept from public view.

At the pleading stage, a plaintiff need only allege facts supporting a reasonable inference that the caller acted on the defendant's behalf under ordinary agency principles. Mr. Hoffman satisfies that standard. He alleges that Bath Planet Seattle used *Bath Planet's name* to solicit customers for *Bath Planet's products*, acted as Bath Planet's regional sales and installation arm, and generated revenue for Bath Planet through those calls. Those allegations plausibly support an agency relationship sufficient to impose vicarious liability under the TCPA and CEMA at this early stage. Because the existence and scope of that relationship turn on facts uniquely within Defendants' possession, they cannot be resolved on the pleadings. Bath Planet's effort to short-circuit discovery is therefore premature and contrary to settled law, and its motion for judgment on the pleadings should be denied.

## II.    FACTS

Mr. Hoffman is like everyone else—he hates telemarketing calls. They disrupt his day and

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BCI ACRYLIC, LLC D/B/A BATH PLANET'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Page 1

relentlessly push products he has no interest in buying. Mr. Hoffman received over 37 calls in a period of six months from Bath Planet's co-Defendant Bath Planet Seattle, an exclusive distributor of Defendant Bath Planet's plastic bathtubs in the Seattle Area. Compl. ¶ 29. The more than 37 calls and messages at issue identified only "Bath Planet" as the caller—not Bath Planet Seattle— both because callers identified themselves as calling "from Bath Planet" and because the Caller ID Name (CNAM) for the calls displayed "Bath Planet," consistent with Bath Planet's franchisee telemarketing guidelines. *Id.* ¶¶ 29–35, 49–51. Mr. Hoffman sent correspondence to Bath Planet regarding the illegal telemarketing. *Id.* ¶ 56. Despite this notice, Bath Planet took no action to terminate, discipline, or otherwise restrain Bath Planet Seattle, even though the calls identified only "Bath Planet" and failed to comply with TCPA identification requirements. *Id.* ¶¶ 57–61.

Bath Planet Seattle operates as an exclusive franchisee and installer of Bath Planet products, marketing and installing only Bath Planet–branded goods under the Bath Planet name. *Id.* ¶¶ 45–46. Therefore, both Defendants sought and obtained financial benefit from the calls placed to Mr. Hoffman and the putative class. Bath Planet Seattle generated business for installation services, while Bath Planet profited from the sale of its manufactured products installed by Bath Planet Seattle. *Id.* ¶ 44. Mr. Hoffman also alleges Bath Planet directs its franchisees' sales and installation model, provides marketing materials and leads, and retains control over marketing conducted in its name. *Id.* ¶¶ 47–48. Mr. Hoffman's allegations are further supported by the Agreement attached to Defendant's motion, which authorized Bath Planet Seattle to use Bath Planet's trademarks, funded a shared advertising and marketing budget, and provided Bath Planet-approved materials to Bath Planet Seattle. Such marketing arrangements are common for products requiring a regionalized sales and installation force, and appellate courts have repeatedly held in analogous TCPA cases that similar facts are sufficient to establish vicarious liability.

Mr. Hoffman adequately alleges that Bath Planet is vicariously liable for those calls under each of the three recognized agency theories—actual authority, apparent authority, and ratification—based on the representations made to Mr. Hoffman by Bath Planet, the nature of the relationship between Bath Planet and Bath Planet Seattle, and the Agreement governing that relationship. Although Mr. Hoffman alleges that Bath Planet required Bath Planet Seattle to exclusively sell and install its products and to advertise using Bath Planet's name, Bath Planet dismisses these allegations as "rank speculation." (MJP at 3). But Mr. Hoffman does more than speculate. He pleads concrete facts describing the contours of the parties' relationship and its operation, based on both his own experiences and Bath Planet Seattle's own pleadings. Bath Planet nevertheless denies that reality and claims that Mr. Hoffman has not sufficiently alleged an agency relationship at this stage.

## III.    LEGAL STANDARD

### A.    Standard on motion for judgment on the pleadings

Under Rule 12(c), a court may allow judgment to be taken on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard applied on a Rule 12(c) motion for judgment on the pleadings is essentially the same as that applied to Rule 12(b)(6) motions. Judgment on the pleadings is appropriate when, even if all material facts in the complaint are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, all inferences reasonably drawn from the facts alleged in the complaint must be construed against the moving party. *Id.*

### B.    Standard for vicarious TCPA liability under federal common law.

A plaintiff may show that a defendant is liable for violating the TCPA under federal common-law principles of agency. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd.

1   6574 (May 9, 2013); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014), *aff'd*,

2   577 U.S. 153, 168 (as amended Feb 6, 2016). Agency exists "when one person (a 'principal')

3   manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and

4   subject to the principal's control, and the agent manifests assent or otherwise consents so to act."

5   *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (citing Rest.

6   (3d.) of Agency § 1.01) (quotation marks omitted). There are three agency theories for establishing

7   TCPA liability: actual authority, apparent authority, and ratification. *Jones v. Royal Admin. Servs.*,

8   887 F.3d 443, 453 n.3 (9th Cir. 2018) (citing *In re Dish Network, LLC*, 28 FCC Rcd. at 6584).

9       At common law, "[w]hether an agency relationship exists is for a court to decide based on

10  an assessment of the facts of the relationship," and how the parties define their relationship "is not

11  dispositive." *Henderson*, 918 F.3d at 1073. "Whether an agency relationship exists is generally a

12  question of fact for the jury." *Hartman v. United Bank Car, Inc.,* No. C11-1753JLR, 2012 U.S.

13  Dist. LEXIS 144759, at *16 (W.D. Wash. Oct. 4, 2012) (quoting *Unruh v. Cacchiotti*, 172 Wn.2d

14  98, 257 P.3d 631, 638 (Wash. 2011)). *See also Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d

15  1292, 1301 (D. Nev. 2014) (same); *Nat'l Football Scouting Inc. v. Cont'l Assur. Co.*, 931 F.2d

16  646, 649 (10th Cir.1991) (same); *J&J Sports Prods., Inc. v. Bear*, No. 1:12-CV-01509-AWI-

17  SKO, 2013 U.S. Dist. LEXIS 27084, at *13 (E.D. Cal. Feb. 26, 2013) (similar). It naturally follows

18  that "a plaintiff is not required to plead all of its evidence in the complaint in order to plausibly

19  allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing

20  *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an

21  agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v.*

22  *Solid   Quote   LLC*,   702   F.   Supp.   3d   1052,   1059   (D.   Colo.   2023).

## IV.    ARGUMENT

### A.    Mr. Hoffman plausibly alleges Bath Planet's vicarious liability.

Defendant, in essence, adopts in its motion an "I didn't do it" defense. That may be so. Mr. Hoffman does not allege that Bath Planet itself directly placed the calls at issue. Rather, Mr. Hoffman adequately alleges that Bath Planet is vicariously liable for those calls. Under the TCPA, defendants like Bath Planet are "vicariously liable for the TCPA violations of third-party callers 'where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and the third-party caller.'" *Williams v. Pillpack LLC*, 644 F. Supp. 3d 845, 851 (W.D. Wash. 2022) (quoting *Henderson,* 918 F.3d at 1072). To establish an agency relationship, courts consider the "bedrock theories of agency"  including "[1] actual authority, [2] apparent authority, and [3] ratification." *Id.* (citing *Jones*, 887 F.3d at 449).

Mr. Hoffman alleges facts showing that the calls were made to market Bath Planet's products, invoked Bath Planet's name, and resulted in benefits flowing directly to Bath Planet, including the setting of a sales appointment. Compl. ¶¶ 29–35, 44, 49–51. Those facts plausibly support an inference that the caller acted on Bath Planet's behalf and within a telemarketing structure designed to generate business for Bath Planet. *Id.* ¶¶ 44–48. The precise contours of that relationship—including who controlled which aspects of the calling campaign, how the calls were initiated, and what authority the caller exercised—are matters uniquely within Defendants' knowledge. At this early stage, Mr. Hoffman has alleged sufficient facts to support a reasonable inference that Bath Planet exercised actual authority and apparent authority over Bath Planet Seattle, and that Bath Planet ratified Bath Planet Seattle's conduct.

1              **1.  Mr. Hoffman has sufficiently pleaded Bath Planet's actual authority.**

2        Actual authority arises when "at the time of taking action that has legal consequences for

3    the principal, the agent reasonably believes, in accordance with the principal's manifestations to

4    the agent, that the principal wishes the agent so to act." *Williams*, 644 F. Supp. 3d at 854 (quoting

5    RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Actual authority covers actions "[1] specifically

6    mentioned to be done in a written or oral communication or [2] consistent with a principal's general

7    statement of what the agent is supposed to do." *Id.* The former represents "express" actual

8    authority—such as when the principal states "in very specific or detailed language" how an agent

9    is to act—while the later represents "implied" actual authority—such as when an agent acts "in a

10   manner in which [the] agent believes the principal wishes the agent to act based on the agent's

11   reasonable interpretation of the principal's manifestation in light of the principal's objectives and

12   other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc*., No. 1:19CV657, 2020

13   WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious

14   liability case); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187,

15   1199 (M.D. Tenn. 2017) ("The question of whether implied authority may have existed would

16   require the Court to know more about the course of the parties' dealings and the generally expected

17   course of business[.]").

18        Actual agency "does not require the principal to specify the singular acts for which her or

19   her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what

20   is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL

21   10502631, at *2 (M.D. Fla. Feb. 4, 2020) "The concept of scope of authority is broad. An agent

22   has authority to act to further the principal's objectives, as the agent reasonably understands the

23   principal's manifestations and objectives. The principal is liable for the acts of the agent to further

24   PLAINTIFF'S RESPONSE IN OPPOSITION TO
     DEFENDANT BCI ACRYLIC, LLC D/B/A BATH PLANET'S
25   MOTION FOR JUDGMENT ON THE PLEADINGS
     Page 6

the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba,* 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, Mr. Hoffman has more than adequately pled facts giving rise to such an inference of actual authority based on the fact that the calls were all made from agents who claimed to be calling from Bath Planet, invoked the Bath Planet name, and marketed Bath Planet's manufactured (and branded) goods and services. Compl. ¶¶ 29–35, 49–51. Mr. Hoffman further alleges the calls were made for the purpose of generating sales appointments and business for Bath Planet products, resulting in direct benefits to Bath Planet. *Id.* ¶¶ 44, 55. These allegations support the inference that the callers were authorized to act for Bath Planet in initiating telemarketing communications and promoting its products, which is sufficient at the pleading stage to establish actual or implied actual authority. This is sufficient to demonstrate an inference of actual or implied actual authority.

### 2.  Mr. Hoffman has sufficiently pleaded Bath Planet's apparent authority.

Bath Planet is vicariously liable under an "apparent authority" theory. Apparent authority arises when "[1] a third party reasonably believes the actor has authority to act on behalf of the principal and [2] that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc*., No. 21-55099, 2022 U.S. App. LEXIS 9079, at *4 (9th Cir. Apr. 5, 2022) (citing Restatement § 2.03). The FCC's illustrative examples are instructive and provide guidance on this topic. *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6592

(2013). The FCC has identified as indicative of apparent authority situations in which a seller of goods authorizes the caller "to use the seller's trade name, trademark and service mark," as well as to convey "detailed information regarding the nature and pricing of the seller's products and services." *Id.*

From Mr. Hoffman's perspective, nothing suggested the caller was anything other than Bath Planet itself, or simply a regionalized branch of a head office, because the Caller ID Name (CNAM) for the calls displayed "Bath Planet," consistent with Bath Planet's franchisee telemarketing guidelines. *Id.* ¶¶ 29–35, 49–51. Nothing in the calls suggested that the caller lacked authority to act on Bath Planet's behalf or that Bath Planet Seattle was a separate, unaffiliated entity. *Id.* ¶¶ 49–52. Therefore, no reasonable consumer would believe that he is being called by a purportedly "independent" distributor, particularly when Bath Planet's trademark was used, and where pricing would have been provided in accordance with the parties' Agreement. These facts plausibly support the inference that Bath Planet cloaked Bath Planet Seattle with apparent authority by permitting it to use Bath Planet's name, trademarks, and marketing materials in consumer-facing telemarketing. As a result, the Court should find Bath Planet Seattle acted with apparent authority.

### 3.   **Mr. Hoffman has sufficiently pleaded ratification.**

Bath Planet also ratified Bath Planet Seattle's acts. Ratification "occurs when the principal accepts the benefit of the agent's act either with [1] actual knowledge of the material facts or [2] with knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Williams*, 644 F. Supp. 3d at 855 (internal citations omitted). The Ninth Circuit has explained that the second option is simply "willful ignorance." *Id.* Ultimately, ratification is a fact-intensive inquiry. *See McCurley*, 2022 U.S. App. LEXIS 9079, at

*8 (reversing the district court's grant of summary judgment for the defendant regarding ratification because "there is a material dispute of fact as to whether [defendant] ratified [the telemarketer's] acts").

Here, Mr. Hoffman pleads facts sufficient to support an inference that Bath Planet acted with actual knowledge of, or at minimum willful ignorance toward, Bath Planet Seattle's unlawful conduct. First, the calls were all made for the parties' mutual benefit: Bath Planet Seattle sought installation work, while Bath Planet stood to profit from the sale of its manufactured bathtub products. Compl. ¶¶ 44–46. Second, Bath Planet cannot deny it had "full knowledge of the facts and the choice to either accept or reject the benefit of the transaction," as Mr. Hoffman notified Bath Planet of the unlawful telemarketing *Id*. ¶¶ 56-61. Despite this notice, Bath Planet continued its franchise relationship with Bath Planet Seattle and continued to accept the benefits of telemarketing conducted in its name. *Id*. ¶¶ 57–66. Bath Planet had the ability to supervise and control its franchisees' marketing practices and to terminate Bath Planet Seattle for noncompliance, but failed to do so. *Id*. ¶¶ 60–65. These allegations support the inference that Bath Planet knowingly accepted the benefits of Bath Planet Seattle's telemarketing while declining to investigate or repudiate the unlawful conduct. At this stage, those allegations are sufficient to support a finding that Bath Planet ratified Bath Planet Seattle's acts.

**B.      The relationship and agreement between Bath Planet Seattle and Bath Planet further support Bath Planet's vicarious liability.**

Defendant Bath Planet contends that the pleadings do not show that it can be liable as a matter of law for its franchisee's conduct. But this argument misses the mark for two key reasons. First, it ignores the unique nature of the relationship between the parties. Bath Planet fixates on Mr. Hoffman's characterizes this relationship, denying that the parties have a franchise-relationship. (MJP at 3). But agency does not turn on whether Bath Planet is formally labeled as a

franchisor. Instead, courts examine the parties' business relationship in substance. And Bath Planet does not dispute that it benefits directly from Bath Planet Seattle's illegal telemarketing through "revenue from the sale of its [branded] products to installers." (*Id.*) Nor is Bath Planet's asserted lack of control over Bath Planet Seattle's "actions or inactions taken regarding customer outreach," dispositive, even if true. Control is not the sole path to vicarious liability here—particularly in light of (1) the relatively unique type of business relationship at issue here, and, (2) the express terms of the Agreement between Bath Planet Seattle and Bath Planet.

### 1. <u>Bath Planet Seattle functions as the sales and installation arm of Bath Planet's distribution pipeline.</u>

On the first point, the Fourth Circuit's decision in *Krakauer v. Dish Network, Inc.*, is particularly illustrative. In *Krakauer,* Mr. Hoffman sued Dish Network, a satellite TV company, for calls that were placed by a "firm called Satellite Systems Network (SSN), whose entire business model was to make calls like these on behalf of television service providers. During the time that SSN was calling Krakauer, the company only marketed Dish." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019). The record in *Krakauer* did not involve a rogue telemarketer selling its own unrelated products as Bath Planet seems to suggest here. Instead, the calls were "made for the sole purpose of selling Dish services," and SSN "only marketed Dish" during the relevant period. *Id.* In other words, SSN's telemarketing was not some freestanding enterprise. It was the front end of Dish's sales pipeline. SSN sold and installed the Dish-branded satellite dishes and Dish-branded satellite TV boxes manufactured by Dish, while Dish provided the monthly TV services. *See id.*

That pipeline is structurally similar to the manufacturing, sales, and installation model here. Dish sold a branded and standardized consumer product (satellite television dishes, boxes, and the associated services) that needed to be fulfilled locally through a downstream channel, namely, its

authorized dealer and installer SSN. SSN sold Dish's branded products and services via telephone and completed the last-mile installation necessary to deliver them into the customer's home. In *Krakauer*, the Fourth Circuit held that when a seller operates through a downstream channel whose role is to sell the seller's branded offering, calls made by that channel can be treated as calls made "on behalf of" the seller and can support vicarious liability under ordinary agency principles. *See id.* at 660. And the *Krakauer* Court further held that disputes over how the business model operated and how SSN fit within it were factual questions properly resolved by a jury, which ultimately found Dish vicariously liable. *Id.* These issues, by their nature, are not amenable to resolution at the pleadings stage.

The same logic applies to Bath Planet's relationship with Bath Planet Seattle. Bath Planet Seattle does not call to sell or install generic bath tubs; it calls to sell *Bath Planet-branded* tubs and systems, and then performs the local installation of those *branded* goods. That installation role does not sever the "on behalf of" relationship—it confirms it. It is the functional equivalent of the dealer/installer role in *Krakauer*: the last-mile fulfillment of a centrally branded, centrally marketed product. As in *Krakauer*, where the jury evaluated evidence that SSN's calling activity existed to generate Dish customers for Dish's branded goods and services, the telemarketing here exists to generate customers for Bath Planet's branded goods, with Bath Planet Seattle as the local fulfillment arm that installs what Bath Planet manufactures and sells.

### 2.  <u>The Dealership Agreement supports an agency relationship.</u>

In support of Bath Planet Seattle's motion to dismiss, it produced a copy of its "Dealership Agreement" with Bath Planet. (ECF No. 19-2). That agreement contains multiple provisions from which a reasonable jury could find that Bath Planet conferred implied actual authority on Bath Planet Seattle to solicit customers by telephone to sell Bath Planet-branded products (and in doing

so, to generate sales for Bath Planet).

**First**, the Agreement is expressly "made to establish" the dealer Bath Planet Seattle "as an authorized seller and installer" of "Bath Planet Products," and as a "licensed Licensee" of Bath Planet's trademarks and related brand assets. With that authorization comes Far from demonstrating a lack of connection, the Agreement reflects a branded distribution and installation system that contemplates the dealer Bath Planet Seattle acting *for* Bath Planet in a regionalized market, using Bath Planet's name, marks, and system. It is therefore manifestly *false* for Bath Planet to claim that it "has no direct connection to the sender," Bath Planet Seattle, or to dismiss the agency theory arising from this Dealership Agreement as a "speculative franchise theory." (MJP at 9). To the contrary, the basis for agency is set out in "black and white, clear as crystal." WILLY WONKA AND THE CHOCOLATE FACTORY, Paramount (1971).

**Second**, the Agreement appoints the dealer as the "exclusive and sole distributor" for sales of Bath Planet Products in the defined territory, and obligates the dealer to "confine sales and selling efforts" to that territory. Those territorial exclusivity and sales restrictions reinforce an agency relationship by designating Bath Planet Seattle as the authorized channel through which Bath Planet's products are to be marketed and sold in that market, and by aligning the dealer's sales efforts directly with Bath Planet's commercial interests. A reasonable jury could infer from these provisions that Bath Planet intended Bath Planet Seattle to act on its behalf in generating customer demand for Bath Planet–branded products within the territory.

**Third**, the Agreement grants an "exclusive License to sell and install" Bath Planet products, mandates that all sales, marketing, and installation occur "under the Bath Planet name" and associated marks "specified by" Bath Planet, prohibits the dealer from selling or installing competing products, and requires the dealer to purchase all "Required Products" exclusively from

Bath Planet or its designees—terms similar to those at issue in *Krakauer*. A jury could reasonably view those provisions as Bath Planet's manifestation that Bath Planet Seattle is the authorized channel through which Bath Planet's products are to be marketed and sold in the territory. This is precisely the kind of arrangement in which outbound telephone solicitation is a natural (and expected) means of generating sales for the principal's branded goods. It also mirrors the commercial structure present in *Krakauer*, where third-party sellers acted as the local face of the national brand, and  engaged in marketing allegedly not explicitly requested by the national brand.

**Fourth**, the Agreement references "preapproved advertising materials" funded through a "maintenance and marketing fund" that pays "advertising, marketing and promotion expenses *on behalf of* all Dealers." (Emphasis added). This, too, is a manifestation of agency: Bath Planet funds Bath Planet Seattle's marketing efforts, which, by the very terms of the Agreement, include paying for telephone-based outreach.

Finally, Bath Planet's reliance on contractual language labeling Bath Planet Seattle an independent contractor is misplaced. Such labels are not dispositive. "[T]he fact-finder may weigh the disclaimer against other evidence that suggests the existence of an agency relationship. *In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, No. 09-2076RSL, 2010 WL 2640260, at *9 (W.D. Wash. June 25, 2010) (citing *Dubret v. Holland Am. Line Westours, Inc.*, 25 F.Supp.2d 1151, 1153 (W.D. Wash. 1998)). Indeed, disclaimers of agency appear in virtually every agreement where courts have nevertheless found an agency relationship, and for good reason— they do not defeat agency liability.

Taken together, the Agreement's express terms, the parties' course of dealing, and the manifestations made to Mr. Hoffman provide ample evidence for a factfinder to conclude that Bath Planet and Bath Planet Seattle were engaged in an agency relationship for which Bath Planet would

be vicariously liable.

**C.    Agency determinations require discovery and are best resolved at summary judgment or trial.**

Courts are clear that "the precise details of the agency relationship need not be pleaded to survive a motion to dismiss" because "the information necessary to connect all the players is likely in [the defendant's] sole possession." *Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG 2021 U.S. Dist. LEXIS 53561, at *7 (S.D. Cal. Mar. 22, 2021) (quoting *Kristensen,* 12 F.Supp.3d at 1301). In *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, the court explained that "Plaintiffs at this stage in the litigation do not have visibility into Defendant's operations to be able to marshal detailed evidence of the relationship between Defendant and those who physically placed the calls." No. 6:24-cv-00243, 2024 U.S. Dist. LEXIS 175344, at *11 (D. Or. Sep. 27, 2024) (denying dismissal).

Simply put, the existence (or nonexistence) of an agency relationship is a fact-intensive inquiry which is best resolved at summary judgment or trial. *See, e.g., Hoffman v. Hearing Help Express Inc.*, No. C19-5960, 2021 U.S. Dist. LEXIS 5959, at *6 (W.D. Wash. Jan. 12, 2021) (explaining that "factual disputes over [defendant's] vicarious liability . . . will need to be resolved at summary judgment or trial"); *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823, 2023 U.S. Dist. LEXIS 51955, at *15 (W.D. Wash. Mar. 27, 2023) ("[C]onsumers should not be required to develop all of the facts surrounding the agency relationship at the pleadings stage."); *Dawson v. Porch.com*, No. 2:20-cv-00604, 2024 U.S. Dist. LEXIS 206363, at *31 (W.D. Wash. Nov. 13, 2024) (denying dismissal in relevant part when plaintiffs alleged "vicarious liability, agency . . . and ratification"); *Arizona v. Michael D. Lansky L.L.C.*, No. CV-23-00233, 2024 U.S. Dist. LEXIS 83642, at *32–33 (D. Ariz. May 8, 2024) ("Questions of fact relevant to determining vicarious liability require discovery and preclude granting the motion to dismiss on this issue.");

*Hartman*, 2012 U.S. Dist. LEXIS 144759, at *16 ("Whether an agency relationship exists is generally a question of fact for the jury.") (quoting *Unruh*, 257 P.3d at 638).

That principle applies with full force here. The nature of the relationship between Bath Planet and Bath Planet Seattle—particularly when viewed alongside the express terms of their Agreement—raises factual questions that cannot be resolved without discovery. Courts addressing similar arrangements have emphasized that agency determinations often turn on how the parties' relationship functions in practice, which requires a developed factual record. For example, in *Jones v. Royal Admin. Servs., Inc.*, the Ninth Circuit affirmed the dismissal of an agent, *but only* at summary judgment, and cited an extensive factual record developed by the parties. 887 F.3d 443, 448 (9th Cir. 2018). Likewise, in *Williams v. PillPack LLC*, this Court held that disputed material factual disputes existed regarding the contract between the defendant and third-party marketing vendors, who then hired subvendors to sell defendant's goods. 644 F. Supp. 3d 845, 853-54 (W.D. Wash. 2022). The Court held that, even in the absence of explicit contractual mandates, the communications between defendant and these third parties "give the reasonable impression that PillPack gave authority to both Performance Media and Prospects DM to hire subagents to carry out the media campaign on behalf of PillPack. As a result, if a jury finds that PillPack and Performance Media were in an agency relationship, a jury could also find that PillPack authorized Performance Media to engage Prospects DM and its subcontractors, and PillPack accepted the legal consequences of their actions." *Id.* at 854. By the same logic here, Bath Planet can give *implied* actual authority to make calls in violation of the TCPA, even *if* no express authority was provided. *See id.* at 855. But this Court held that the issue was a factual question that precluded summary judgment. *Id.*

Here, discovery is necessary to probe facts that are uniquely within Bath Planet's control

and directly relevant to agency. These include, among others: whether Bath Planet knew or should have known that Bath Planet Seattle engaged in telemarketing; whether Bath Planet received revenue from sales generated by Bath Planet Seattle's calls; whether Bath Planet provided marketing guidance, materials, or training to Bath Planet Seattle; and whether Bath Planet continued its relationship with Bath Planet Seattle after learning of telemarketing activity or complaint from Mr. Hoffman (and possibly others). Each of these questions bears directly on actual authority, apparent authority, and ratification, and none can be resolved from the pleadings alone. Bath Planet's claim that it "did not even know Bath Planet Seattle engaged in telemarketing" is a disputed question that requires discovery to answer, especially considering Bath Planet does not deny that it directly benefits from Bath Planet Seattle's illegal telemarketing through "revenue from the sale of its [branded] products to installers." (MJP at 3). That admission alone warrants further inquiry into the nature of the relationship between Bath Planet Seattle and Bath Planet.

Additionally, the Agreement Bath Planet attached to its motion further underscores the need for discovery. For example, while the Agreement references the payment of advertising and marketing expenses—suggesting that Bath Planet provided *implied* actual authority to Bath Planet Seattle to place the subject calls—the scope and nature of those expenditures cannot be determined at this stage. Do those expenses authorize or contemplate the sale of goods over the telephone? Do they reflect implied actual authority to engage in telemarketing? Did they pay for the very services at issue in this litigation, including calling platforms, personnel, or marketing materials used during the calls? At this stage, the Court cannot answer these questions, which demonstrates precisely why a motion for judgment on the pleadings here is inappropriate and why discovery into the Agreement and the parties' relationship is necessary. Discovery may reasonably show that customer acquisition, including telephone-based lead generation, is a core, bought-and-paid-for

component of Bath Planet's distribution system, designed to drive Bath Planet's branded products across its dealer network. That inference aligns with the principle that TCPA vicarious liability turns on the parties' actual relationship, including implied relationships, between the parties in practice, rather than contractual labels. *See, e.g., Williams*, 644 F. Supp. 3d at 853-54.

Accordingly, whether Bath Planet is vicariously liable for the calls at issue is a question tested through discovery, not dismissal.

## V.    CONCLUSION

The Motion should be denied or leave to amend the pleadings granted to correct any deficiencies.

*[Counsel signatures to follow on next page.]*

Respectfully submitted this 9th day of February, 2026.

/s/ Samuel J. Strauss
Samuel J Strauss, WSBA No. #46971*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave, Ste 1610
Chicago, IL 60611
(T) 872-263-1100
(F) 872-263-1109
sam@straussborrelli.com

*I certify that this memorandum contains 5,232 words in compliance with the Local Civil Rules of the Western District of Washington.*

Andrew Roman Perrong *(pro hac vice)*
**PERRONG LAW LLC**
2657 Mt. Carmel Avenue
Glenside, PA 19038
(T) 215-225-5529
(F) 888-329-0305
a@perronglaw.com

Anthony Paronich *(pro hac vice)*
**PARONICH LAW PC**
350 Lincoln Street, Ste 2400
Hingham, MA 02043
(T) 617-485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the Proposed Class*

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BCI ACRYLIC, LLC D/B/A BATH PLANET'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Page 18

1

## **CERTIFICATE OF SERVICE**

2

I, Samuel J. Strauss, hereby certify that on February 9, 2026, I caused the foregoing to be

3

electronically filed with the Court using the Court's CM/ECF system which will send an

4

electronic copy to all parties and/or their counsel of record.

5

DATED this 9th day of February, 2026.

6

Respectfully submitted,

7

*/s/ Samuel J. Strauss*
Samuel J Strauss, WSBA No. #46971

8

**STRAUSS BORRELLI PLLC**

9

980 N Michigan Ave, Ste 1610
Chicago, IL 60611
(T) 872-263-1100

10

(F) 872-263-1109
sam@straussborrelli.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BCI ACRYLIC, LLC D/B/A BATH PLANET'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Page 19